JOHN BAXTER *vs.* BENJAMIN TRIPP, City Treasurer of the City of Providence.

A statute allowed the city of Providence to construct sewers in the public streets and to make certain assessments therefor on the adjoining lands. It also allowed the owner of assessed land to enter such sewer from such land "upon executing to said city a release of all damages which may at any time happen to such estate in any way resulting from such connection."

Under this statute the city took up an old drain in L. Street and built a sewer in its place. B., a landowner on L. Street, connected his estate with the sewer after signing the statutory release, and suffered repeated injuries from the reflux of filth from the sewer into his premises, owing to the insufficient size of the sewer. B. brought an action against the city to recover damages for the injury sustained, claiming, 1, that the statutory release was invalid; 2, that he could recover on showing the insufficient size of the sewer and his resulting losses.

*Held,* that the action could not be maintained.

*Held,* further, that the court could not say as a matter of law that either the drainage furnished by the sewer without a direct connection with the plaintiff's estate or the privilege of connecting with the sewer under the statutory conditions was an insufficient consideration for the special sewer assessments on the plaintiff's land.

*Held,* further, that if the assessments were invalid because without consideration, the plaintiff could not be compelled to pay them, but that this did not affect the validity of the statutory release.

*Held,* further, that the plaintiff, if he had a right of action against the city for taking up the old drain, could not transmute this right into a claim for damages for the insufficient size of the sewer.

*Held,* further, that at common law the plaintiff had no right of action against the city for the insufficient size of the sewer, and that any right of action arising from his payment of the statutory assessments was cut off by the statutory conditions of release.

*Held,* further, that the court could not declare an act of the legislature void as against public policy, considerations of public policy being admissible in construing an act but not in determining its validity.

PLAINTIFF'S petition for a new trial. The facts are stated in the opinion of the court.

*Charles H. Parkhurst,* for plaintiff, contended: 1. A municipal corporation is no more exempt from liability than an individual when its act results in the invasion of private property..

If a city constructs a sewer so as to discharge its contents upon private property it is responsible for the injury ; and the flooding of private property in that way is just as much an appropriation of it as the taking of an easement in it would be. *Clark* v. *Peckham*, 9 R. I. 445 ; *Inman* v. *Tripp*, 11 R. I. 520, and cases cited ; *Ashley* v. *Port Huron*, 35 Mich. 296, and cases cited ; *Eaton* v. *B., C. &. M. R. R. Co.* 51 N. H. 504 ; *Rowe* v. *Portsmouth*, 56 N. H. 291 ; *Reeves* v. *The Corporation of Toronto*, 21 U. C. Q. B. 157 ; *Pumpelley* v. *Green Bay Company*, 13 Wall. 166.

2. It is no answer to the plaintiff's claim to say that the city council, in ordering a sewer to be built in Lippitt Street, were acting in a judical capacity. The case shows that the city council only ordered a sewer to be constructed by their agents and servants, the water commissioners. The act of ordering the sewer to be built is all that can be claimed under the authorities to be a judical act. They left all questions of construction, size, depth, materials, and all other matters to the unfettered discretion of their servants, though notified at the time of ordering the construction of the sewer in Lippitt Street, as the street then was, that the inevitable effect of such construction would be to flood the plaintiff's estate. In determining the size of the sewer and the manner of construction, the city authorities were acting ministerially, and having accepted the grant of power to construct sewers and assess the adjoining estates for the cost of construction, were bound to exercise such skill in the construction of the sewer and to give it such a capacity for drainage that it should not become a nuisance. Cooley's Constit. Limit. 248, and cases cited ; *Rochester White Lead Co.* v. *City of Rochester*, 3 N. Y. 463 ; *Barton* v. *City of Syracuse*, 36 N. Y. 54 ; *Lacour* v. *Mayor, &c. of New York*, 3 Duer, 406 ; *Wilson* v. *Mayor, &c. of New York*, 1 Denio, 595 ; *City of Camden* v. *Mulford*, 26 N. J. Law, 49 ; *Thurston* v. *City of St. Joseph*, 51 Mo. 510 ; *City of Indianapolis* v. *Huffer*, 30 Ind. 235 ; *Child* v. *City of Boston*, 4 Allen, 41 ; *Emery* v. *City of Lowell*, 104 Mass. 13 ; *Perry* v. *City of Worcester*, 6 Gray, 544 ; *Hill* v. *City of Boston*, 122 Mass. 344 ; *Barnes* v. *District of Columbia*, 1 Otto, 540 ; *Barry* v. *City of Lowell*, 8 Allen, 127.

3. Under Pub. Laws, cap. 313, of March 28, 1873, the plaintiff had the right to connect his estate with the sewer.

4. The compulsory requirement of release was void as against public policy.

*Nicholas Van Slyck*, City Solicitor of the City of Providence, for defendant. 1. A municipal corporation is not bound to construct any drain or sewer, and no action will lie for not exercising powers it may possess. *City of Atchison* v. *Challis*, 9 Kans. 603, 610 ; *Wilson* v. *Mayor, &c. of New York*, 1 Denio, 595 ; *Mills* v. *City of Brooklyn*, 32 N. Y. 489 ; *McCarthy* v. *City of Syracuse*, 46 N. Y. 194 ; *Carr* v. *Northern Liberties*, 35 Pa. St. 324 ; *Bennett* v. *City of New Orleans*, 14 La. An. 120 ; *Roll* v. *City Council of Augusta*, 34 Ga. 326 ; Dillon on Municipal Corporations, § 799 ; *Aldrich* v. *Tripp*, 11 R. I. 141, 144.

2. The duty of providing drainage for surface water is in its nature judicial, or *quasi*-judicial, requiring the exercise of judgment as to time, best means, plan, &c. It follows that a civil action will not lie for the manner of exercising such power, or for not exercising such power. Dillon on Municipal Corporations, § 801 ; *Child* v. *City of Boston*, 4 Allen, 41, 52 ; *Wilson* v. *Mayor, &c. of New York*, 1 Denio, 595, and other cases cited above ; *Aldrich* v. *Tripp*, 11 R. I. 141, 144 ; *Hill* v. *City of Boston*, 122 Mass. 344, 358.

3. A municipal corporation may abandon a sewer or drain, if such abandonment does not leave individuals worse than before the sewer was built, without liability for damages. *City of Atchison* v. *Challis*, 9 Kans. 603.

4. A person connecting his land by an underground connection with a public sewer has no right of action for a back flow, whether he pays for the privilege of making such connection or not. *Dermot* v. *Mayor, &c. of Detroit*, 4 Mich. 435 ; *Roll* v. *City of Indianapolis*, 52 Ind. 547.

5. The only right that the plaintiff had to enter this sewer was given by Pub. Laws R. I. cap. 313, § 5, March 28, 1873 ; but that right was given subject to a condition that such plaintiff should execute a release of all damage which might arise to his estate in *any way* resulting from such connection, and in accordance with such requirement such release was executed by the plaintiff ; *i. e.* the right is given coupled with the condition that there shall be no claim for damages.

6. The condition of the sewer as to capacity, sufficiency, or

efficiency was the same when plaintiff voluntarily connected his cellar therewith, and any want of capacity, sufficiency, or efficiency was known by him or should have been known by him, and the defendant is thus brought within the principle, " That a person who by his negligence has exposed himself to injury cannot recover damages for the injury thus received." Wharton on Negligence, § 300 ; *Roll* v. *City of Indianapolis*, 52 Ind. 547.

*March* 8, 1879. DURFEE, C. J. The plaintiff brings this action against the city of Providence, to recover damages which he claims to have suffered in his estates on Lippitt Street, in that city, in consequence of the negligent and careless construction, use, and maintenance of a sewer in Lippitt Street by the city. On the trial to the jury the plaintiff submitted testimony to show that he was the owner of two estates on the northerly side of Lippitt Street, purchased in 1864, at which time Lippitt Street was platted and thrown out as a street, though it did not become a public highway until September 27, 1875 ; that before it became a public highway there had been in the centre of it a stone aqueduct twenty inches square, built by the Canal Bleachery, who were formerly owners of the land, to convey water to their works ; and that after the Canal Bleachery gave up business and sold the land, it had been used by the plaintiff and other purchasers as a sewer, the plaintiff having connected his estates with it in 1865, and enjoyed the use of it from 1865 to 1875, when the sewer complained of was built, without being troubled by water flowing back upon his estates.

The plaintiff also submitted testimony to show that the sewer complained of was constructed by the water commissioners, under the direction of the city council, in the winter of 1875–6, the aqueduct being removed to make room for it ; that after it was constructed, having been or being liable to be assessed for it, he applied for permission to connect his estates with it, and obtained permission on signing the required agreement ; and that after he had connected his estates with the sewer, the estates were several times flooded by filthy water from the sewer flowing back upon them through the connections, in consequence of the incapacity of the sewer to carry it off without choking, causing very serious injuries, direct and consequential. There was no evidence of injury from any other cause than the backward flow of water from the sewer through the connections.

The plaintiff further submitted testimony to show that the new sewer was sixteen inches in diameter ; that opposite one of the plaintiff's estates it was only six feet underground, and opposite the other some seven or eight ; that it was not large enough to carry off the water and filth brought into it ; that the city authorities were notified, before the sewer was built, that if built as it afterwards was built, the inevitable result would be that the plaintiff's estates, and other estates similarly situated, would be liable to be flooded in every severe storm, and also that the city had paid the plaintiff for damages resulting from two floodings, prior to those which are the ground of the present action.

After introducing this testimony the plaintiff rested, and the court thereupon ruled that the action could not be maintained, and nonsuited him. The plaintiff excepted, and now petitions for a new trial for error in the ruling. The question therefore for us to decide is, whether the action is maintainable on proof of the facts disclosed by the testimony.

The sewer was constructed after the passage of several local acts,[1] relating to the construction and maintenance of sewers in the city of Providence, and was confessedly constructed under and by virtue of them. Under one of them,[2] the owner of land on a street through which a sewer is laid is liable to assessment at the rate of sixty cents for each front foot ; and with some qualifications, at the rate of one cent for each square foot of his land within one hundred and fifty feet of the street, and, being so assessed, is entitled to connect his estate with the sewer, under certain general regulations, "upon executing to said city a release of all damages which may at any time happen to such estate in any way resulting from such connection." Accordingly the plaintiff, when he applied for leave to connect with the sewer, executed an agreement not to make any claim against the city for damages occasioned by the construction, use, or existence of the sewer or his connection with it ; and this agreement, though not a technical release, must be held to be at least equivalent to the release required by the statute.

---

[1] The sewer acts up to the present time have been:

Public Laws, cap. 313, March 28, 1873; cap. 333, May 30, 1873; cap. 393, May 28, 1874; cap. 431, February 18, 1875; cap. 549, April 20, 1876; cap. 635, May 31, 1877; cap. 711, May 31, 1878.

[2] Public Laws, cap. 313, §§ 4, 5, March 28, 1873.

The plaintiff brings this action to recover damages resulting from his connection with the sewer, and, consequently, under the provision and release aforesaid, he cannot recover unless he can show, *first*, that the provision and release are null and void; and *second*, that independently of them he is entitled to damages, simply because of the insufficient size of the sewer without proof of any neglect to keep it as constructed in proper order and repair. The counsel for the plaintiff addressed his argument mainly to the second point, apparently supposing that the first point needed no elaboration. He did, however, suggest certain reasons why the provision and release should be held to be invalid, and these reasons we will carefully consider ; for, as we have seen, unless the provision and release are invalid, the plaintiff cannot maintain his action, and it will be unnecessary for us to consider the second point at all.

The first ground on which the counsel contends that the provision and release are invalid, is, that otherwise there would be no equivalent for the special assessment, and the assessment would be unconstitutional and void. The argument rests upon the idea, which is doubtless correct, that a special assessment is allowable only when some special benefit is conferred, which is an equivalent or consideration for it ; but it also assumes that the only sufficient consideration for the assessment here is the privilege of connecting with the sewer, and that even the privilege of connecting with the sewer is not sufficient without the right of suing the city for damages in case the sewer is not capacious enough to carry off the water accumulating in it. The argument is not valid unless the assumption is valid. It is, however, by no means clear that the assumption is valid. On the contrary, the theory of the statute appears to be that the drainage of the street and of the land adjacent to it is a sufficient equivalent for the assessment, and that the privilege of connecting with the sewer is something in excess which is gratuitously given, and which the abuttor is free to accept or refuse ; but which, if he does accept, he shall accept at his own risk, in respect of damages resulting from the connection. This appears to be the theory, because the assessment may be made whether the land assessed is connected with the sewer or not, and even when it is unimproved. But, supposing the privilege of connecting with

the sewer is contemplated as a part of the special benefit conferred by way of consideration for the assessment, it is the privilege subject to the condition that the city shall be released from any claim of damages resulting from the connection which is so contemplated, and not the privilege without the condition.   And certainly we cannot say, as a matter of law, that this view is erroneous.   For aught that we know, the privilege of connecting with the sewer is very valuable to an abuttor, though exercised under the condition.   And again, for aught that we know, the benefit to be derived from the sewer, independently of the privilege, may be a full equivalent for the assessment.

But let us suppose that without the privilege of safely connecting with the sewer, the plaintiff does not receive any special benefit which can justify the special assessment.   Does it follow that the provision and release are invalid, and that the plaintiff is entitled to maintain his action ?   We do not see that it does. What we do see is, that if the city has so constructed the sewer that the plaintiff can derive no special benefit from it under the statute, he may for that reason properly refuse to pay the assessment.   If, however, instead of refusing, he elects to pay it, and applies for the privilege of connecting with the sewer under the statute, he can only have the privilege as the statute allows it to him, without the right of suing for damages resulting from the connection.   If he is entitled to more, it is certainly not under the statute that he is entitled to more ; but under the Constitution or at common law.   The Constitution, however, simply secures to him immunity from unfair taxation.   Such an immunity cannot enlarge his right in the sewer.   It merely warrants his refusing to pay the assessment, or entitles him to remedy or relief in case the city levies or attempts to levy it upon his person or property.   The right which the plaintiff has in the sewer at common law we shall consider under another head.

The second ground on which the provision and release are claimed to be invalid is, that before the sewer was constructed the plaintiff had the use of an aqueduct which answered all the purposes of a sewer without injuring him in the least, and that it was destroyed to make room for the sewer.   The argument is that the city had no right to deprive the plaintiff of the aqueduct without supplying its place with a sewer which could be used as

safely and as well. If we were trying this case in a court of conscience, the argument would perhaps be valid. But we are trying it in a court of law, and therefore our inquiry should be, first : has the plaintiff suffered any *legal* wrong? and if he has, second : what is his legal remedy? Now it is certain that the city either had or did not have the right to destroy the aqueduct for the purpose of building the sewer. If it had the right, the plaintiff can have no claim against it for exercising the right. And his right in the aqueduct, being lost by the destruction of the aqueduct, can neither augment nor diminish any right which he may acquire in the sewer. If, however, the city had no right to destroy the aqueduct, then the destruction is the wrong which the plaintiff is entitled to complain of, and his remedy is to sue for damages on account of it. There is no principle of law by which he can transmute his claim for damages for the destruction of the aqueduct into a claim for damages for the insufficiency of the sewer ; and if, instead of suing for the destruction of the aqueduct, he sees fit to connect with the sewer, he can have no better right of action for damages resulting from the connection than if the aqueduct had never existed. The action in the case at bar is an action for damages resulting from connection with the sewer, and it must be tried on its own merits, without regard to any claim which the plaintiff may have for the loss of his right in the aqueduct.

The third ground on which the provision and release are claimed to be invalid is, that the plaintiff had the right to connect with the sewer independently of the statute, as owner of one half the soil of the street, where the connection was made, subject to the easement of the public highway. The plaintiff, as such an owner, had the right at common law to use the street in any way not incompatible with the public right. But does this give him a right to connect his private drain with the public sewer ? It may at least be doubted if it does. If, however, he has the right at common law to connect with the sewer, and chooses to exercise it, then very clearly he can acquire by its exercise only such a claim against the city as would accrue to him at common law. The question then is, what kind of a claim could the plaintiff have at common law against the city for not building the sewer capacious enough for him to enter it with

safety ? Very clearly he could not have any claim at all ; for the reason that the city is under no obligation at common law to build the sewer large enough to accommodate him as well as the public. If, independently of the statute, he connects with the sewer and suffers from a retroflux of sewage through his connections, because the sewer is not large enough to carry it freely off, he merely suffers the consequences of his own voluntary act, and of course cannot call upon the city for indemnity. At the utmost he could only hold the city for neglecting to keep the sewer in good order ; and, if the connections were made and maintained without the city's permission, express or implied, we do not see how, for a flooding of his estates through the connections, he could hold the city even to that degree of liability. It is only the assessment which gives the abuttor any right or color of right to have the sewer constructed large enough for him safely to connect with it. But the right given by the assessment is a right under the statute, and by the statute it is simply a right to connect with the sewer on releasing the city from any claim of damages resulting from the connection. And we do not see that the common law affords any implications by which the right, as expressed in the statute, can be enlarged.

Finally, it is urged that the requirement of the release is against public policy. It suffices to say in reply to this, that the release is required by an act of the General Assembly, and we have no right to declare an act of the General Assembly ineffectual, simply because it is, in our opinion, against public policy. If the construction of the statute were in question ; as, for instance, if the question were whether the release was designed to cover damages resulting from a neglect by the city to keep the sewer, as built, unobstructed and in good order ; then, indeed, considerations of public policy would be entitled to weight. In the case at bar we have no such question. The release, if valid, unquestionably bars the action ; for the action is confessedly for damages resulting solely from the connection of the plaintiff's estate with the sewer ; and, as is alleged, inevitably resulting from such connection, even though the sewer as constructed were kept in the most perfect order.

Our conclusion is that under the statute, and under the agreement which the plaintiff executed when he applied for permis-

sion to connect· with the sewer, the action cannot be maintained, and consequently that a new trial must be denied and the petition dismissed. *Petition dismissed.*